In re Frances Ranae KEARNEY, Debtor.

Frances Ranae KEARNEY, Plaintiff,

v.

NEBRASKA STUDENT LOAN PROGRAM, INC., Defendant.

Bankruptcy No. 92–21084–7.

Adv. No. 93–6015.

United States Bankruptcy Court, D. Kansas.

Dec. 2, 1993.

James W. Lusk of the Law Offices of James L. Farmer, Lenexa, KS, for debtor.

Thomas L. Griswold of Payne & Jones, Chartered, Overland Park, KS, for Nebraska Student Loan Program, Inc.

John Foulston, U.S. Trustee, Wichita, KS.

*MEMORANDUM OPINION*

JOHN T. FLANNAGAN, Bankruptcy Judge.

Debtor, Frances Ranae Kearney, appears by her attorney, James W. Lusk of the Law Offices of James L. Farmer, Lenexa, Kansas. Defendant, Nebraska Student Loan Program, Inc., appears by its attorney, Thomas

L. Griswold of Payne & Jones, Chartered, Overland Park, Kansas.

Because of alleged financial hardship, debtor's complaint prays that her student loan debts be discharged under 11 U.S.C. § 523(a)(8). Defendant, Nebraska Student Loan Program, Inc., answers and counterclaims for a judgment against debtor for the unpaid balance of the student loans, a ruling that the debts are nondischargeable, and for its reasonable attorney's fees and costs of collection.

The Court held a trial on October 14, 1993, and took the matter under advisement. Having heard the testimony, reviewed the exhibits in evidence, and considered the arguments, the Court finds that repayment of the student loans would impose an undue hardship on debtor and her dependent. The Court grants debtor a discharge of the student loans under 11 U.S.C. § 523(a)(8)(B).

### FINDINGS OF FACT

In the Final Pretrial Order, the parties stipulated to the following facts:

A. That Plaintiff executed a promissory note payable to Union State Bank on November 2, 1989 in the amount of $2,625.00 with an interest rate of 8% (fixed).

B. That Plaintiff executed a promissory note payable to Union State Bank on November 2, 1989 in the amount of $2,200.00 with an interest rate of 9.34% (variable).

C. That the Plaintiff made payments totally $1,350.00 in repayment of the Notes.

D. That the amount due and owing on the First Note as of March 1, 1993 is $2,599.20, plus interest at a rate of 8% (fixed).

E. That the amount due and owing on the Second Note as of March 1, 1993 is $1,897.01 plus interest From March 1, 1993 at the rate of 9.34% (variable).

F. That the Notes did not become due and owing more than seven (7) years prior to the filing of the Plaintiff's Bankruptcy Petition.

The parties further stipulate and agree that the law governing this case is Federal law and Kansas law.

The parties further stipulate and agree that the only fact issue to be decided by the Court is undue hardship.

(Final Pretrial Conference Order filed September 10, 1993, at 2–3.)

Mrs. Kearney was the only witness at trial. However, defendant did present evidence in the form of exhibits admitted by stipulation of counsel.

Defendant's Exhibit 6 shows that as of October 14, 1993, Mrs. Kearney's student loan indebtedness was $2,723.66 on the first note and $1,969.35 on the second note. The total owing on the two notes is $4,693.01. The first note called for 63 consecutive monthly payments of $50.00 beginning February 11, 1991, with a final payment of $91.34. The second note called for 41 consecutive monthly payments of $50.00 beginning May 24, 1990, with a final payment of $52.21. Each note entitled the holder to reasonable attorney's fees and collection costs.

Defendant's Exhibit 3 and the stipulation show that Mrs. Kearney paid a total of $1,350.00 on the loans. No evidence was presented to indicate when the last payment was made on either of the notes.

Mrs. Kearney testified that she was recently divorced. The divorce court granted her custody of her three-year old daughter, but allowed her former husband to retain the property accumulated during the marriage. The divorce court ordered the ex-husband to pay $307.00 per month in child support. However, the support payments have been sporadic and Mrs. Kearney has had to take her former husband to court repeatedly to enforce the support award. The ex-husband works in construction and his income depends on the weather. Mrs. Kearney feels that the prospects for future support are poor because her former husband has informed her that he is probably not going to be able to return to his employment in Nebraska where he has worked since last winter.

At the time the notes first came due, debtor was married and she and her husband were making the loan payments. The di-

vorce court ordered the ex-husband to continue paying debtor's student loan obligations. However, after the divorce, he filed for bankruptcy without informing debtor that he had defaulted on the student loans.

Mrs. Kearney obtained the student loans to finance her training as a dental assistant. Apparently, she obtained employment, because she stated that she had worked as a dental assistant and received $7.50 per hour. However, debtor was not able to work full-time because her employer was frequently away from the office. She had no insurance benefits through her job. Eventually, she left the dental assistant's position because she could not meet her expenses with the wages she earned. She sees no prospect of returning to that profession.

Since April 1993, Mrs. Kearney has been employed as a mini-dump truck driver with Holland Corporation in Overland Park, Kansas. Her current hourly wage is $14.51. She is only able to work when weather permits and she is only paid for hours she actually works.

Debtor's Exhibit "A" consists of her pay stubs for each pay period since she began her employment with Holland Corporation. The stubs show that debtor has received the following net income: April 1993, $212.85; May 1993, $867.04; June 1993, $1,150.21; July 1993, $871.37; August 1993, $1,979.77; and September 1993, $1,131.63.

Debtor's take home pay for 1992 was approximately $8,000.00.

The following monthly averages of debtor's expenses in each category were established:

| | |
|---|---|
| House payment | $ 186.00 |
| Day care | 300.00 |
| Utilities | 150.00 |
| Phone | 70.00 |
| Food | 153.00 |
| Gas | 90.00 |
| Clothing | 25.00 |
| Avco (furniture loan) | 100.00 |
| Truck payment | 210.00 |
| Insurance on home & vehicle | 55.00 |
| Total | $1,339.00 |

The Avco loan will be paid off in approximately five months. The truck loan has 14 payments left. In addition to its regular maintenance, the truck, a 1985 model, needs tires and a rebuilt carburetor.

Debtor suffers from periodic muscle spasms in her neck. She has received medical treatment for this condition, which is aggravated by driving the mini-dump truck. According to debtor's physician, no cure exists for these spasms and they will reoccur. When debtor suffers a muscle spasm attack, she cannot work and must see her doctor and receive physical therapy. Each visit to the doctor costs $65.00; each physical therapy session costs $150.00.

The itemization of monthly expenses does not include regular maintenance and repairs to debtor's home. In addition, vehicle and medical expenses were not itemized as specific monthly amounts. These expenses arise regularly, although their exact nature and amount are not predictable. After receiving her pay check and paying her current bills, Mrs. Kearney often has as little as $20.00 to $30.00 left to cover food, medical expenses, and other day-to-day living expenses.

The debtor has no prospects for improving her financial situation. This circumstance makes the debtor reluctant to leave her present job where she has health insurance for herself and her daughter. She feels that she needs to keep her current job despite the variance in hours she is able to work. She does not see any expenses in her budget that could be reduced or eliminated. Her child support payments are not regular and will probably require future court action to enforce. As a single mother, she has parenting responsibilities that prevent her from taking on additional employment.

## CONCLUSIONS OF LAW

The Court informed counsel at the start of trial that debtor had the burden of proof in establishing the following three-part test of dischargeability under § 523(a)(8)(B):

1) That the debtor cannot maintain, based on current income and expense, a "minimum" standard of living for herself and her dependent if forced to repay the loans;

2) That additional circumstances exist indicating that this state of affairs is like-

ly to persist for a significant portion of the repayment period of the student loans; and

3) That the debtor has made good faith efforts to repay the loans.[1]

At the close of evidence, defendant's counsel conceded that debtor had satisfied her burden of proof on the third element of the test—that she had made a good faith effort to repay the loans.

Defendant's counsel did not contest the first element of the test—that debtor cannot maintain a minimum standard of living for herself and her dependent if forced to repay the loans. The evidence supports debtor's claim on this point. She currently has no funds left after paying her living expenses; she maintains a minimal standard of living; she has poor prospects for increased income from her employment; she has poor prospects of collecting future child support; and she has no room in her budget for unexpected expenses.

Debtor's expenses are minimal at best. One hundred and fifty dollars a month to feed two people, particularly in today's economy, is conservative. Additionally, debtor's budget does not include any expenses for laundry or cleaning items, recreation, newspapers, charitable contributions, personal or real property taxes, home or vehicle maintenance, medical or dental expenses not covered by insurance, or attorney's fees. The evidence shows that debtor cannot maintain, based on her current income and expenses, a "minimum" standard of living for herself and her dependent if forced to repay the loans.

Defense counsel concedes that in the short run debtor and her dependent would face an undue hardship if required to repay the student loans. But, he suggests that there is no proof that this is the case in the long run. The second prong of the test requires a showing "that additional circumstances exist indicating that this state of affairs [a "minimum" standard of living for herself and her dependent if forced to repay the loans] is likely to persist for a significant portion of the repayment period of the student loans."

However, the Court is satisfied that debtor has met her burden of proof on this part of the test. Considering the age of debtor's dependent, debtor's medical problems, and debtor's current financial situation, the Court believes debtor's state of adverse financial affairs is likely to persist for a significant portion of the repayment period of the student loans.

Both loans are long past due. Disregarding accruing interest, if paid at the rate of $100.00 per month, the remaining debt of $4,603.91 would be paid off in approximately 46 months, or almost four years. The defense has offered no evidence that the payoff rate would be less than the combined $100.00 per month plus interest required by the terms of the notes. This leads to the conclusion that the "repayment period" referred to in the test must be that period over which the loans could be repaid if debtor were forced to repay them at the rate established in the notes. The evidence shows that debtor has a minimum standard of living, whether or not she is forced to repay the loans. Nothing indicates that debtor's income will increase enough within the next four years to retire the loans within that time period[2] without leaving her and her dependent in necessitous circumstances. Under this state of the record, the Court believes that debtor's inability to pay these student loans will continue "for a significant portion of the repayment period of the student loans."

Accordingly, the Court rules that debtor has established that the repayment of the student loan obligations would impose an undue hardship on her and on her dependent. Debtor is granted a discharge from her indebtedness to the defendant under 11 U.S.C. § 523(a)(8)(B). The relief requested in defendant's counterclaim is denied.

---

1. This test comes from 2 David G. Epstein, Steve H. Nickles, James J. White, *Bankruptcy* § 7–33, at 398 (1992) (citing *Brunner v. New York State Higher Educ. Services*, 831 F.2d 395, 396–97 (2nd Cir.1987)).

2. The Court is aware that some of debtor's obligations will be paid off within the next six months. Even so, her income and expense picture does not provide a standard of living sufficient to repay the loans and still maintain herself and her dependent properly under all of the proven circumstances.

This Memorandum Opinion shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a). This proceeding is core under 28 U.S.C. § 157. The Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D.Kan. Rule 705).

IT IS SO ORDERED.