In re Glenn R. LINDBERG and
Terry T. Lindberg, Debtors.

Glenn R. LINDBERG and Terry
T. Lindberg, Plaintiffs,

v.

AMERICAN CREDIT AND COLLECTION, STUDENT LOAN SERVICING CENTER, and Student Loan Servicing Center, Defendants.

Bankruptcy No. 90–11152–7.
Adv. No. 93–5130.

United States Bankruptcy Court,
D. Kansas.

July 28, 1994.

---

William C. Weber, Wellington, KS, for debtors.

Stephen K. Lester, Asst. U.S. Atty., Wichita, KS, for USA.

Lynn D. Allison, Trustee, Wichita, KS.

## MEMORANDUM OPINION AND ORDER

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes before the Court pursuant to the Complaint to Determine Dischargeability filed on May 2, 1993, by Glenn R. Lindberg and Terry T. Lindberg ("debtors"). A hearing was held on July 12, 1994, at which time the Court took the matter under advisement. The debtors appeared in person and by and through their attorney, William C. Weber. The United States of America appeared by and through its attorney, Stephen K. Lester.

### JURISDICTION

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

### FINDINGS OF FACT

The parties stipulate and agree that Glenn Lindberg and Terry Lindberg each incurred a student loan that first became due not more than five years before they filed their bankruptcy petition. The parties further stipulate that the balance due and owing on Glenn Lindberg's loan was $9251.95 as of March 24, 1994; and the balance due and owing on Terry Lindberg's loan was $1163.51 as of March 24, 1994. Glenn and Terry Lindberg are married and have four children. The two oldest children, ages 15 and 12, are Terry's children by a prior marriage. She received child support sporadically until January, 1994, when she started receiving $150 a month. Given her ex-husband's sporadic employment history, she doesn't expect regular payments. Her ex-husband is $27,-500 in arrears on child support; but Terry Lindberg has assigned her right to the arrearage to SRS, after a lengthy battle to obtain past and current child support from her ex-husband.

The two oldest children have significant medical problems. The 15–year–old daughter is a "brittle diabetic" who requires constant medical attention. The 12–year–old has Attention Deficit Disorder. The two oldest children are not covered by Glenn Lindberg's medical insurance, and rely on an SRS medical card for insurance coverage.

Terry Lindberg is unemployed and if she obtained employment, her two oldest children would no longer be eligible for medical coverage. She would have to pay their medical expenses out of pocket. Terry Lindberg is a 36–year–old high school graduate, with no special training or education. She obtained a student loan in 1984 to get vocational training, but was unable to complete any course because she could not afford child care. Since high school she has worked a total of about 18 months, at two fast food restaurants. She has not worked in the last eight years, and the most she ever earned

was about $400 a month. She is unable to work now, because she cannot afford to pay for child care with the minimal income she is capable of earning. In addition to the 15 and 12–year–old children, who both require medical attention, the Lindbergs have a 7–year–old child who also has Attention Deficit Disorder and a 5–year–old child who is hyperactive.

Glenn Lindberg completed the 11th grade and has no diploma or G.E.D. Prior to 1989, his work experience was also limited to jobs in fast food restaurants. In 1989, he obtained a student loan to attend Amtech Institute, where he completed a course in automobile body paint and repair. Since 1989, he has had two jobs, both in his field. From 1989 to 1993 he was employed by Cain Motors. He lost this job after an on-the-job injury which resulted in his being unemployed for almost a year. He received workmens compensation benefits, but no lump sum or compensation for permanent injury. Glenn Lindberg applied for dozens of jobs during this period of unemployment, finally finding a job in January, 1994, at Collins Bus Company in Newton. Glenn Lindberg commutes 120 miles from their home in Wellington to this new job. He makes the highest wages he ever has at this new job, about $1300 a month in take home pay. He recently received a raise of 75 cents per hour, to $8.77 per hour.

In addition to Glenn Lindberg's income, the family relies on food stamps ($75–$150 per month) and child support ($75–$150 per month when they receive it).

Since they filed bankruptcy, the Lindbergs have incurred about $9500 in medical bills for uninsured charges. They also owe $250 to Security Finance and $3000 to a family member who loaned them the downpayment on the car Glenn Lindberg purchased to commute to his new job. They are unable to make payments on these obligations. In addition, their monthly living expenses, in the approximate amount of $1650, exceed their maximum net monthly income of $1600.[1] In addition, they have other expenses that are not included in their standard monthly bills: clothing expense for four school aged children; car repairs; car insurance; and they are $1000 in arrears on their rent.

The Lindbergs have no credit cards, and their only discretionary expense is $40 for cable television service. Without cable, they would not have any television reception at their residence.

The Lindbergs have made sporadic, minimal payments on these student loans, and the loans were reduced by approximately $800 last year when the Department of Education offset an income tax refund check. The Lindbergs do not anticipate another sizeable income tax refund, as a minimal amount of tax is withheld from Glenn Lindberg's check.

### CONCLUSIONS OF LAW

The parties agree that the sole issue for the Court's determination is whether the loans should be discharged to avoid the imposition of an undue hardship on the debtors and their dependents. 11 U.S.C. § 523(a)(8)(B) provides that a student loan will not be excepted from discharge, unless it "will impose an undue hardship on the debtor and the debtor's dependents." An undue hardship means more than the hardship a typical debtor experiences by virtue of his financial difficulties or insolvency.

The debtor has the burden of proving that the student loans are dischargeable. See In re Mathews, 166 B.R. 940, 943 (Bankr. D.Kan.1994) (citing In re Foreman, 119 B.R. 584 (Bankr.S.D.Ohio 1990)). This Court agrees with other cases that have held that the test established in In re Brunner, 46 B.R. 752 (S.D.N.Y.1985), aff'd 831 F.2d 395 (2d Cir.1987), is the best approach for determining dischargeability under § 523(a)(8)(B). See, e.g., In re Mathews, 166 B.R. at 944; In re Kearney, 162 B.R. 335, 337–38 (Bankr. D.Kan.1993). The test set out in Brunner requires the debtor to show:

(1) that the debtor cannot, based on current income and expenses, maintain a

---

1. Their monthly expenses include: rent ($250); car loan ($151.50); cable television ($40); gas and utilities ($350); phone ($50); food ($600); and gasoline and oil for the car Glenn Lindberg uses to commute to Newton ($200).

"minimal" standard of living for himself or herself and his or her dependents if forced to repay the loans;

(2) that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

*In re Brunner,* 46 B.R. at 756.

█ Glenn Lindberg completed his education, enhanced his job possibilities and is employed in his field, but he still earns a minimal income, $8.77 per hour. Glenn Lindberg is virtually the sole supporter of this six person family. Their children have special needs and Glenn Lindberg has extraordinary expenses associated with his commute to and from work each day. Terry Lindberg has no job skills, was unable to complete her education, and can find no job that will pay the cost of child care as well as the $400 a month in out of pocket medical expenses that would no longer be covered by the state. In short, the Lindbergs' outlook after bankruptcy is as bleak as it was going into bankruptcy. And, given their special circumstances, the ages and medical problems of their children, the loss of insurance if Terry Lindberg obtains a job, and her limited income potential, there is almost no likelihood that they will be able to pay their student loans.

The Lindbergs have made good faith efforts to repay their student loans. Terry Lindberg testified that at times she tendered $50 checks to the Department of Education, but was told she had to make a $1000 lump sum payment. They have minimal income and minimal discretionary expenses. Most of their expenses are for subsistence; their other expenses arise from a host of medical problems.

For these reasons, the Court finds that the debtors have carried their burden of proving that excepting these student loan obligations from discharge would render an undue hardship on the debtors and their dependents.

**IT IS THEREFORE ORDERED BY THE COURT** that the debtors shall be discharged from their student loan debts pursuant to 11 U.S.C. § 523(a)(8)(B).

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.