**In re Lance David HOLLISTER, Debtor.**

**Lance David Hollister, Plaintiff,**

**v.**

**University of North Dakota, Nebraska Student Loan Program, Inc., and, Defendants,**

**and**

**Educational Credit Management Corp., Intervenor.**

Bankruptcy No. 98–21365–WV.
Adversary No. 99–1097–WV.

United States Bankruptcy Court, W.D. Oklahoma.

April 3, 2000.

J. David Ezzell, Elliott Enabnit Newby & Ezzell, Enid, Oklahoma, for debtor.

David L. Nunn, Edmond, Oklahoma, for Nebraska Student Loan Program.

Mac D. Finlayson, Tulsa, Oklahoma, for intervenor Educational Credit Management Corp.

## MEMORANDUM OPINION

THOMAS M. WEAVER, Bankruptcy Judge.

This matter came on for trial at which time plaintiff Lance David Hollister ("Plaintiff") appeared through counsel, J. David Ezzell, and defendant, Nebraska Student Loan Program, Inc. ("NSLP"), appeared through its counsel, David L. Nunn, and intervenor Educational Credit Management Corp. ("ECMC") appeared through its counsel, Mac D. Finlayson.[1] Plaintiff presented his evidence in support of his claim for dischargeability of various student loan obligations pursuant to 11 U.S.C. § 523(a)(8). Defendants presented their evidence in defense. After having heard the evidence and arguments of counsel, the court took the matter under advisement. Pursuant to FED.R.CIV.P. 52(a), made applicable to these proceedings by FED.R.BANKR.R. 7052, the court renders the following memorandum opinion which constitutes the court's findings of fact and conclusions of law.

### Jurisdictional Statement

The court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(1).

### Findings of Fact

Plaintiff is a debtor who filed a voluntary petition under Chapter 7 of the Bankruptcy Code in this court on November 17, 1998. On March 3, 1999, plaintiff filed the instant adversary proceeding seeking a discharge of his federally guaranteed student loans pursuant to 11 U.S.C. § 523(a)(8).[2]

---

1. Unless specifically referenced, Defendant and Intervenor will be referred to collectively as "defendants."

2. All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, unless specifically stated otherwise.

The notes at issue herein were issued under a program made, insured, guaranteed or funded by a governmental unit and referred to as the Federal Family Educational Loan Program ("FFELP"), formerly known as the Guaranteed Student Loan Program, established by the Higher Education Act of 1965, Pub.L. No. 89–329, Nov. 8, 1965, Tit. IV, 79 Stat. § 1219 (20 U.S.C. §§ 1071–1087–4), as amended. The United States Department of Education ("USDOE") is a department of the government of the United States responsible for the regulation of the administration of the FFELP. As such, the USDOE does not have a claim independent of those of defendants.

Defendants herein are non-profit guaranty agencies. Defendants' loans are guaranteed student loans under the FFELP, which are reinsured by the USDOE. Defendants have paid under the terms of their guaranties, and their promissory notes as hereinafter set forth have been endorsed and assigned to them.

Plaintiff is a 41-year-old single male with no dependents. He began his education at Seward County Community College in August, 1988. Between 1990 and 1991, plaintiff attended the University of Oklahoma and studied geography. Plaintiff then continued his education at the University of North Dakota until leaving in December, 1993. Plaintiff did not receive a bachelors degree, although he estimates he lacked only 7-8 credit hours to complete his degree.

In November, 1993, plaintiff's mother suffered a stroke, and plaintiff returned to his parents' home in Beaver, Oklahoma, to assist during his mother's recuperation. Plaintiff continues to live with his parents, although plaintiff testified that his mother's stroke was not disabling.

Plaintiff has been employed as a correctional officer with the Oklahoma Department of Corrections since June, 1997. His net pay per month averages $1400.00, and he testified that he foresees no increases in the future.

Plaintiff testified that he suffers from a variety of ailments, including irritable bowel syndrome, anxiety and depression, but they do not affect his ability to work. In fact, plaintiff's health conditions have not been so severe so as to prevent him from working a full-time job and occasional overtime.

Plaintiff testified that he currently has the following monthly expenses: [3]

| | |
|---|---|
| Vehicle payment | $ 350.00 [4] |
| Entertainment | 100.00 [5] |
| Insurance | 60.00 |
| Cell phone | 35.00 |
| Cable TV | 40.00 [6] |
| Internet | 25.00 |
| Medicine | 120.00 [7] |
| Medical doctors | 20.00 |
| Clothing | 30.00 |
| Meals | 100.00 |
| Fuel | 100.00 [8] |
| Groceries | 75.00 [9] |

3. Plaintiff's current expenses are based on the current circumstances of living with his parents. Plaintiff testified that it is his, as well as his parents', desire that he move out. If he were to do so, his monthly expenses would increase by $525.00, which includes monthly apartment rent of $350.00, utility bills of $100.00 and $75.00 per month increased spending for groceries.

4. Plaintiff testified that he would have his vehicle paid off in the next year.

5. As per his testimony, this category includes plaintiff's expenditures for "books, CDs, and a computer."

6. On cross-examination, plaintiff admitted that this is not "basic cable" but satellite TV. Thus, he has access to the premium channels, such as HBO and Showtime.

7. Plaintiff testified that he takes 5 different medications daily. His co-payment for each prescription is approximately $20.

8. Plaintiff's place of employment is approximately 25 miles from his home.

9. Although his parents furnish the bulk of the groceries, plaintiff testified he occasionally brings home groceries and helps with utility payments.

| | | | | | |
|---|---|---|---|---|---|
| Tags | 20.00 |
| Vehicle maintenance/repair | 50.00 |
| Debt repayment to parents | 200.00 [10] |
| Total payments | $1325.00 |

Plaintiff pays no rent; thus, no rent payment is included in plaintiff's budget. Plaintiff testified that he would prefer to move out of his parents' house but that he is unable to afford to live anywhere else. The monthly rental for an apartment in the Beaver, Oklahoma, area is $350.00–400.00.

Also excluded from plaintiff's budget is $300 per month plaintiff testified he is paying in attorney fees. According to plaintiff, this payment will continue indefinitely. Adding the $300 payment to the identified expenses as set out above equals a monthly deficit of $225.00 ($1400.00 net pay minus $1625.00 expenses). Plaintiff did not testify that his parents are absorbing this deficit or helping him with his stated monthly expenses, other than the one-time expense for vehicle repairs. Thus, it appears that plaintiff is funding $1625.00 worth of monthly expenses with $1400.00 in monthly income. The only logical inference to be drawn therefrom is that certain of plaintiff's expenses are inflated. Plaintiff is able in some manner to eke the $300 attorney fee payment out of his already-identified $1325.00 in monthly expenses. The court declines therefore to treat the $300 attorney fee payment as an additional expense.

In the Agreed Final Pretrial Order, the parties stipulated to the terms and amounts due under the various notes, which can be summarized as follows:

| Agency | Claim/Loan No. | Principal Amount | Accrued Interest | Interest Rate | # of Pmts |
|---|---|---|---|---|---|
| NSLP | Claim 1 (Loans #1, 4, 3 & 7) | $8,992.71 | $1,236.69 | 8.41% | 0 |
| NSLP | Claim 2 (Loan #6) | $2,378.10 | $ 280.11 | 8.68% | 0 |
| NSLP | Claim 3 (Loan #2) | $5,672.21 | $ 619.67 | 8.68% | 0 |
| NSLP | Claim 4 (Loan #8) | $2,305.83 | $ 255.36 | 8.68% | 0 |

| ECMC | Note #1 | $3,056.00 | $3,649.94 | 8.68% | 4 |
|---|---|---|---|---|---|
| ECMC | Note #2 | $1,219.00 | $ 741.49 | 8.53% | 0 |
| ECMC | Note #3 | $1,313.00 | $ 459.24 | 10.00% | 0 |
| ECMC | Note #4 | $ 300.00 | $ 197.91 | 10.00% | 0 |
| ECMC | Note #5 | $1,200.00 | $ 419.72 | 10.00% | 0 |
| ECMC | Note #6 | $ 600.00 | $ 209.85 | 10.00% | 0 |
| ECMC | Note #7 | $ 312.00 | $ 205.86 | 10.00% | 0 |
| ECMC | Note #8 | $3,088.00 | $1,080.04 | 10.00% | 0 |
| ECMC | Note #9 | $1,387.00 | $ 811.00 | 8.53% | 0 |

Plaintiff testified that he has repeatedly requested forbearance or deferments of the notes, but all the subject notes have been accelerated and are currently due in full. At the time of trial, the total amount of principal and interest due and owing to NSLP is $21,740.68, and $20,250.88 due and owing to ECMC. Plaintiff further testified without refute that he had investigated consolidating his student loans but he was unable to afford the monthly payment required.

The evidence adduced at trial established that the dates of the seven NSLP notes preceded the nine ECMC notes. Specifically, plaintiff executed all the NSLP notes beginning October 15, 1988, through July 25, 1990. The ECMC notes were executed beginning July 9, 1991 through June 28, 1993.

### Conclusions of Law

Section 523(a)(8) of the Bankruptcy Code provides as follows:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this para-

---

**10.** Plaintiff testified that he was required to make major post-petition repairs to his vehi-

cle for which his parents provided the funds. He is repaying them.

graph will impose an undue hardship on the debtor and the debtor's dependents. *Id.*

■ Debtor bears the burden to demonstrate undue hardship. *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock),* 45 F.3d 363, 367 (10th Cir.), *cert. denied,* 516 U.S. 828, 116 S.Ct. 97, 133 L.Ed.2d 52 (1995). To establish "undue hardship," a debtor must show:

1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans;

2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and,

3) that the debtor has made a good faith effort to repay the loans.

*Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2nd Cir. 1987). *See Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 306 (3rd Cir.1995), *cert. denied,* 518 U.S. 1009, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996) (adopting the *Brunner* test); *In re Roberson,* 999 F.2d 1132, 1135 (7th Cir.1993) (adopting the *Brunner* test). Although the Tenth Circuit has not adopted a specific test for determining "undue hardship," *see Woodcock,* 45 F.3d at 367, courts in this circuit have separately adopted and applied the three-part test set forth in *Brunner. See Coats v. New Jersey Higher Educ. Assistance Auth. (In re Coats),* 214 B.R. 397, 402 (Bankr. N.D.Okla.1997); *Lindberg v. American Credit & Collection Student Loan Serv. Center (In re Lindberg),* 170 B.R. 462, 464 (Bankr.D.Kan.1994).

■ Student-loan debtors have the burden to establish each element of the *Brunner* test. *See Faish,* 72 F.3d at 305. All three elements must be satisfied individually before a discharge can be granted. If one of the requirements is not met, the

bankruptcy court's inquiry must end there with a finding of nondischargeability. *Id.* at 306 (citing *Roberson,* 999 F.2d at 1135).

■ Turning to the first prong of *Brunner,* the court must examine plaintiff's current financial condition to see if payment of the loans would cause his standard of living to fall below that minimally necessary. The evidence adduced at trial established that debtor is maintaining more than a minimal standard of living. Included in plaintiff's list of expenses are those the court considers excessive. For example, plaintiff pays $40.00 per month for satellite television, $30.00 for Internet access, $15.00 for an extra phone line, $35.00 for cellular phone service. These total $120.00 per month. Further, plaintiff spends $100.00 per month on "entertainment" in addition to the separate amounts for satellite television and on-line services. The court is of the view, however, that an expenditure of half that amount would still provide plaintiff a "minimal" standard of living. Adding $50 to the $120 in excessive expenses results in $170 per month in excessive expenditures. Plaintiff's reasonable monthly expenses would then total $1155.00. Subtracting plaintiff's reasonable monthly expenses from his take-home pay of $1400.00 results in a monthly amount of $245.00 that plaintiff could use for repayment of his student loans.

The second prong of *Brunner* requires plaintiff to establish the existence of "additional, exceptional circumstances, strongly suggestive of [his] continuing inability to repay over an extended period of time." *Brunner,* 831 F.2d at 396. As the *Brunner* court noted, predicting future income is "problematic." *Id.* It remains plaintiff's burden, however, to prove, not only his current inability to repay under *Brunner's* first prong, but his continuing inability to repay his student loans over a significant portion of the repayment period.

■ As to this prong, plaintiff testified that he foresees no increase in his income in the future. The court notes, however,

that through the course of his employment with the Department of Corrections, plaintiff has received increases in his compensation, albeit nominal. The evidence further indicates that plaintiff's financial condition should improve in the near future inasmuch as the note on his vehicle will soon be paid as will his attorney fee debt, presumably. The result will be a $650.00 per month increase in funds available for student loan debt reduction. In addition to the $245.00 per month previously identified as excess expenditures, plaintiff will have an additional $895.00. Assuming plaintiff moves out of his parents' home, his financial net improvement will be $395.00 per month ($895.00 minus an additional $500.00 in living expenses).

But even this $395.00 per month improvement in plaintiff's financial condition will not permit him to service the total amount of his $42,000.00 student loan debt. Assuming a ten-year payout, *see Wardlow v. Great Lakes Higher Educ. Corp. (In re Wardlow)*, 167 B.R. 148, 152 (Bankr. W.D.Mo.1993) (education loans generally repaid over 10 years), at an interest rate of 8.4%, the lowest rate of the instant student loans, plaintiff is able to service approximately $32,000.00 worth of debt, not the $42,000.00, amount currently due in full. The court finds therefore that plaintiff has established additional circumstances indicating his continuing inability to repay his student loan debt.

The final element of the *Brunner* test requires a debtor to prove that he has made a good faith effort to repay his student loans. The evidence at trial established that plaintiff has made four payments on one loan and none on the others. In addition, plaintiff requested forbearance and/or deferments of payments and later investigated consolidating his loans. The court will weigh plaintiff's efforts at repayment in determining the existence of good faith.

In determining whether a debtor has demonstrated good faith, courts have considered not only efforts at repayment but whether the debtor's current circumstances were caused by his own irresponsible behavior. A student who receives government-guaranteed student loans "assumes an obligation to make a good faith effort to repay those loans, as measured by his efforts to obtain employment, maximize income or minimize expenses." *Elebrashy,* 189 B.R. at 928 (quoting *Roberson,* 999 F.2d at 1136). "[U]ndue hardship encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his control." *Faish,* 72 F.3d at 305. In the present case, the record is devoid of any evidence that plaintiff's current inability to repay was a consequence of bad faith or irresponsible choices. There was no evidence at trial concerning the availability of a better-paying job in the area. As earlier noted, plaintiff's budget includes some excessive expenditures, but not to the extent constituting bad faith. Plaintiff's actions did not cause the default on his student loan indebtedness inasmuch as the cessation of his education was due to his mother's debilitating illness. These are generally the types of items that courts consider under the "good faith" prong of *Brunner.*

Evidence exists in this case, however, that plaintiff's primary purpose in filing bankruptcy was to discharge his student loans.[11] Plaintiff admitted as much at tri-

---

11. Some courts have denied the dischargeability of student loan debt in such circumstances under the "policy test" found in *In re Johnson,* 5 Bankr.Ct.Dec. 532 (Bankr.E.D.Pa. 1979). *See D'Ettore v. Devry Inst. of Tech. (In re D'Ettore),* 106 B.R. 715 (Bankr.M.D.Fla. 1989); *Holzer v. Wachovia Servs., Inc. (In re Holzer),* 33 B.R. 627 (Bankr.S.D.N.Y.1983).

In these cases, a determination of nondischargeability resulted from a finding that the dominant purpose for the bankruptcy filing was the discharge of student loans. However, this court is unaware of any cases applying the *Brunner* test's "good faith" prong that have engrafted the "policy test" of *Johnson.*

al.[12] However, the court declines to place much weight on this admission. While a debtor's purpose for filing bankruptcy is relevant in deciding the issue of good faith, this factor alone should not be determinative of the issue or Congress should have so provided in the statutory language. In addition, avoiding the consequences of debts is normally the reason for filing bankruptcy, and the fact that a debtor seeks to discharge almost exclusively student loan obligations in his bankruptcy should be afforded little weight. Thus, plaintiff has established good faith within the meaning of *Brunner*.

For these reasons, the court holds that plaintiff has met his burden to demonstrate undue hardship under the *Brunner* standard. Accordingly, the subject student loans would be determined dischargeable in their entirety except for the following analysis. At the conclusion of the trial of this case, counsel for ECMC urged the court to adopt and apply the analysis set forth in a recent Bankruptcy Appellate Panel for the Eighth Circuit, *Andresen v. Nebraska Student Loan Program (In re Andresen)*, 232 B.R. 127 (8th Cir. BAP 1999).

In *Andresen*, debtor sought to discharge three student loans pursuant to § 523(a)(8). As in the instant case, the loans had not been consolidated. After trial, the bankruptcy court found that debtor had satisfied the requirements of § 523(a)(8) for a hardship discharge of two of three student loans but held that she could pay the third loan without undue hardship.

On appeal, NSLP argued that the bankruptcy court had no authority to grant "partial discharge" of debtor's student loan debt. Rather, it argued, the court should have applied an "all or nothing" approach.

The Bankruptcy Appellate Panel concluded that the bankruptcy court did not

grant Andresen a "partial discharge" of her student loan debt in the sense as contemplated by NSLP or as the term has developed within the case law. Instead, after a thorough analysis of the statutory language of § 523(a)(8), its legislative history and case law treatment, the court determined that the bankruptcy court appropriately had applied the "all or nothing" approach as to Andresen's individual student loans, as opposed to her aggregate educational debt.

The court noted that the statutory language "expressly refers to a student loan, *an* overpayment, or *any* obligation" and recognized that "the words provided in the section are clearly singular. The Code does not refer to a debtor's sum of student loans, aggregate student loan debt, or other accumulated, consecutive, or consolidated loan obligations." *Id.* at 136 (emphasis added). While rejecting the bankruptcy court's authority to enter a partial discharge, i.e. discharging part of a single loan or part of a sum of consolidated loans by some pro rata or percentage measure, the panel determined that "the bankruptcy court's application of § 523(a)(8) to each of Andresen's educational loans separately was not only allowed [by the Bankruptcy Code], it was required." *Id.* at 137.

In deciding previous student loan cases, this court has been loathe to grant partial discharge of student loan indebtedness, to alter repayment terms, or to otherwise modify or restructure the parties' agreement, believing instead that its authority under § 523 was limited to deciding the issue of dischargeability of the entire student loan indebtedness. However, although innovative, the approach taken by the 8th Circuit Bankruptcy Appellate Panel is persuasive for several reasons.

First, this court agrees with the panel that applying the all or nothing approach to individual student loans comports with the statutory language. Second, its appli-

---

12. The court notes that the majority of plaintiff's unsecured debt is attributable to edu-

cational loan indebtedness.

cation alleviates the sometimes harsh result to the creditor accompanying a finding of undue hardship. Where, as here, the debtor has amassed and is able to service some, but not all, of a significant amount of aggregated student loan debt, the *Andresen* approach furthers the policy objectives underlying the discharge exception for student loans on the one hand and the debtor's need for a fresh start on the other. Likewise, its application obviates a potential harsh result to the debtor in the absence of an undue hardship finding. Thus, the court adopts the approach taken by the *Andresen* court and will apply it in this case as requested by ECMC.[13]

The court has previously identified an amount of $395.00 per month that either is or shortly will be available to plaintiff which will permit him to service separate student loans that approximate $32,000.00. Taking the loans in the order made, *see Hinkle v. Wheaton College (In re Hinkle),* 200 B.R. 690 (Bankr.W.D.Wash.1996), plaintiff is able, without undue hardship, to repay all of the notes held by NSLP and notes 1, 2, and 3 held by ECMC. However, plaintiff would suffer undue hardship if the remaining notes held by ECMC were excepted from discharge.

### Conclusion

For these reasons, the court finds in favor of plaintiff in part, in favor of defendant ECMC in part, and in favor of defendant NSLP *in toto* on plaintiff's adversary complaint. A separate final judgment pursuant to FED.R.BANKR.P. 9021 and FED.R.CIV.P. 58 on plaintiff's adversary complaint[14] shall be entered contemporaneously herewith.

---

13. The court notes that plaintiff's loans are unconsolidated.

14. Although in its answer, defendant ECMC purported to assert a counterclaim against plaintiff for judgment, such counterclaim was excluded from the Agreed Pre–Trial Order filed on October 18, 1999. Inasmuch as the pretrial order "supersedes the pleadings and controls the subsequent course of litigation," *see Tyler v. City of Manhattan,* 118 F.3d 1400, 1403 (10th Cir.1997), the court deems the purported counterclaim to be waived.