In re James K. MAYES, III, Debtor.

James K. MAYES, III, Plaintiff,

v.

OKLAHOMA STATE REGENTS FOR HIGHER EDUCATION, Student Educational Assistance Fund, Guaranteed Student Loan Program, Defendants.

Bankruptcy No. 94–71261.
Adv. No. 94–7091.

United States Bankruptcy Court,
E.D. Oklahoma.

June 6, 1995.

Stephen J. Scherer, Muskogee, OK, for plaintiff.

Regina Switzer, Oklahoma City, OK, for defendants.

## ORDER

TOM R. CORNISH, Bankruptcy Judge.

On the 16th day of May, 1995, the above-referenced adversary proceeding came on for trial in Muskogee, Oklahoma. Counsel appearing were Steve Scherer for the Plaintiff and Regina Switzer for the Defendant. At the conclusion of the hearing, the Court requested that Plaintiff's counsel furnish the Court with the Plaintiff's tax returns for 1991, 1992, 1993 and 1994 and allowed the parties until May 24, 1995 in which to file additional authorities. After a review of the above-referenced pleadings, hearing evidence presented and arguments of counsel, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr.P. in this core proceeding:

## STATEMENT OF THE ISSUE

The issue presented is whether the excepting of the Debtor's student loan obligation from discharge will impose an undue hardship on the Plaintiff.

## FINDINGS OF FACT

1. The Debtor filed bankruptcy on October 11, 1994. At the time of filing, the Debtor was indebted to the Defendant.

2. On December 17, 1985, the Debtor executed a promissory note in the principal amount of $1,250.00 in favor of First National Bank and Trust Co. of Oklahoma City.

3. On July 31, 1986, the Debtor executed a promissory note in the principal amount of $1,250.00 in favor of First Interstate Bank of Oklahoma, Oklahoma City, Oklahoma.

4. On December 22, 1986, the Debtor executed a promissory note in the principal amount of $1,300.00 in favor of First Interstate Bank of Oklahoma, Oklahoma City, Oklahoma.

5. On August 11, 1987, the Debtor executed a promissory note in the principal amount of $2,600.00 in favor of First Interstate Bank of Oklahoma, N.A., Lawrence, Kansas.

6. On August 14, 1988, the Debtor executed a promissory note in the principal amount of $2,000.00 in favor of First Interstate Bank of Oklahoma, N.A., Lawrence, Kansas.

7. The Defendant, as assignee and guarantor of the Debtor's student loans, is the current owner and holder of all the promissory notes.

8. The Debtor testified that he attended the University of Oklahoma and Northeastern State University, majoring in finance. The Debtor earned 84 credit hours.

9. The Debtor has made only one payment to the Defendant in the amount of $71.25.

10. The Debtor's Adjusted Gross Income for the previous fours years is as follows:

| | |
|---|---|
| 1991 | $13,160.00 |
| 1992 | $22,338.00 |
| 1993 | $11,368.00 |
| 1994 | $ 9,053.00 |

11. The Debtor testified that he was 31 years old and in good health. The Debtor is divorced and has one child. He pays $109.00 per month in child support. His rent payment of $425.00 began in May, 1995. Prior to that time, he had been living with his parents.

12. The Debtor stated that his other monthly expenses include:

| | |
|---|---|
| Rent | $425.00 |
| Utilities | $125.00 |
| Food | $200.00 |
| Transportation | $100.00 |
| Auto Insurance | $ 45.00 |

13. The Debtor further testified that his monthly budget included $25.00 for clothing, $20.00 for dry cleaning, and $25.00 for miscellaneous. The Debtor testified that the miscellaneous was for things he did with his son, when his son is visiting. The Debtor is the noncustodial parent and does not claim his son on his tax return.

14. The Debtor's last earnings statement reflects that the Debtor's gross pay was $293.75 for 41 hours. The Debtor's rate of

pay is $7.75 per hour while he is working and he is paid $5.35 per hour for driving time.

## CONCLUSIONS OF LAW

■ A. Section 523(a)(8) of the Bankruptcy Code provides:

(a) A discharge ... does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

\*   \*   \*   \*   \*   \*

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

The Debtor seeking a discharge of a student loan bears the burden of proof on the issue of hardship. *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock)*, 45 F.3d 363, 367 (10th Cir.1995) (*citing In re Roberson*, 999 F.2d 1132, 1137 (7th Cir.1993)). The Bankruptcy Code does not define "undue hardship." There are several tests that have been developed by various courts: the "mechanical" test, the "good faith" test, the "policy" test, the "objective" test and the "totality of the circumstances" test.

B. The majority of courts apply the "mechanical" test to determine if the repayment of the student loan will impose an "undue hardship" on the Debtor. The factors to be considered when using the "mechanical" test are:

1. the debtor's rate of pay;
2. the debtor's skill;
3. the debtor's ability to obtain and retain employment;
4. the debtor's level of education;
5. the debtor's health; and,
6. the debtor's household expenses.

*Id.* (*citing In re Craig*, 64 B.R. 854, 856 (Bankr.W.D.Pa.1986)). To prove an "undue hardship," one must be suffering from truly severe and even uniquely difficult circumstances. *Id.*

C. The court in *North Dakota Bd. of Higher Educ. v. Frech (In re Frech)*, 62 B.R. 235, 242–43 (Bankr.D.Minn.1986), examined two additional tests once the "mechanical" test had been satisfied. "[I]f a debtor satisfies the mechanical test that he cannot make such payments, he must satisfy the 'good faith test' by showing that he is actively minimizing current household living expenses and maximizing his personal and professional resources." *Woodcock*, 149 B.R. at 961. If the "good faith test" is satisfied, many courts then apply the "policy test," which examines whether the discharge would constitute the abuse of bankruptcy remedies. In utilizing the "policy" test, the court must look to "the magnitude of the student loan obligation in the total debt structure, and then consider the personal, professional and financial benefit which the debtor has derived and will derive from the education financed by the loans in question." *Id.* at 962.

D. The Eastern District of Oklahoma has previously adopted the "objective" test. *Reyes v. Oklahoma State Regents for Higher Educ. (In re Reyes)*, 154 B.R. 320 (Bankr. E.D.Okla.1993); *see also Bryant v. Pennsylvania Higher Educ. Assistance (In re Bryant)*, 72 B.R. 913 (Bankr.E.D.Pa.1987). The objective test is as follows:

1. The evidence needs to establish the debtor's income from all sources including public assistance, child support payments, etc. The federal regulations define income as "total annual cash receipts before taxes from all sources".

2. If the debtor's income is below, at or near the federal poverty guideline, then the debt will be discharged as creating un "undue hardship" unless the lender can establish that (a) the debtor has failed to maximize his resources or (b) debtor has such clear prospects for future income increases so as to make use of the poverty guideline unrealistic.

3. If the debtor's income is significantly above the federal poverty guideline, then the debt is not discharged unless the debtor can establish unique or extraordinary

**264**

circumstances which would justify a finding of undue hardship.

The Court in *Reyes* noted that the objective approach would eliminate the undesirable result of one debtor prevailing on a dischargeability claim of "undue hardship" in one court while a similarly situated, or perhaps even more destitute, debtor is denied a discharge in another court due to a subjective test. *Id.* at 323–24.

■ The courts in *Claxton v. Student Loan Marketing Ass'n (In re Claxton)*, 140 B.R. 565 (Bankr.N.D.Okla.1992), *and in Johnson v. USA Funds, Inc. (In re Johnson)*, 121 B.R. 91 (Bankr.N.D.Okla.1990) declined adherence to any particular test. The Bankruptcy Court for the Northern District of Oklahoma looks to the "totality of the circumstances," including the circumstances at the time of the commencement of the case and circumstances thereafter. In *Claxton*, the Court noted that the poverty guideline test is suggestive but not conclusive. *Id.* at 569.

E. The Court believes that the "totality of the circumstances" test is the best test in this circumstance. An additional factor to be considered is whether the Debtor's annual cash receipts are less than the poverty guideline. The poverty guideline for a one-person family is $7,470.00 per year. 60 F.R. 7772–01 (1995). Based on the Debtor's earnings so far this year, it can be estimated that the Debtor's gross pay will be $9,403.23 for 1995. Thus, the Debtor's gross pay is slightly above the poverty guideline.

The court may consider other factors. The Debtor received 84 hours of college credit. The Debtor is paying $425.00 per month in rent after living with his parents at a nominal cost. The Debtor enjoys good health and has had steady employment. The Debtor testified that he has always found a job relatively easily.

■ The Bankruptcy Code is clear that Congress did not intend student loans to be discharged except in rare circumstances. This is not one of those cases. The Court does not believe that it would impose an undue hardship on the Debtor to repay this student loan. Therefore, the student loan is hereby nondischargeable.

■ F. However, the Court may modify the amount owed on the student loan or revise the payment terms. *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98, 102 (Bankr.N.D.Ohio 1982). The court in *Ballard v. Commonwealth of Virginia (In re Ballard)*, 60 B.R. 673, 675 (Bankr. W.D.Va.1986), held that the principal amount of the student loan was nondischargeable but that the interest and attorneys' fees were dischargeable. In the instant case, this Court believes that it would be an "undue hardship" for the Debtor to pay any accrued interest and attorneys' fees associated with these student loans. As a result, the Court finds that any interest and attorneys' fees are dischargeable. Furthermore, the Debtor shall repay the principal balance of the student loans at a rate of $50.00 per month beginning July 1, 1995 until the principal balance is paid. The Debtor is entitled to a credit in the amount of $71.25.

IT IS THEREFORE ORDERED that the principal amount of the student loans is nondischargeable.

IT IS FURTHER ORDERED that the interest and attorneys' fees incurred through the date of this Order in connection with these student loans are dischargeable.

IT IS FURTHER ORDERED that the Debtor is to repay the principal amount in monthly payments of $50.00 beginning July 1, 1995 until the principal balance is paid. Post–July interest shall be waived as long as payments are timely made.