In re Larry Don **GRIFFIN** and Elizabeth Kaye Griffin, Debtors.

Larry Don **GRIFFIN** and Elizabeth Kaye Griffin, Plaintiffs,

v.

**EDUSERV**, Oklahoma State Regents for Higher Education, Texas Guaranteed Student Loan Corporation, and Oklahoma State Regents for Higher Education, Defendants.

Bankruptcy No. 95–70884.
Adv. Nos. 95–7070 to 95–7073.

United States Bankruptcy Court,
E.D. Oklahoma.

June 6, 1996.

Jim Pearson, Oklahoma City, OK, for Plaintiffs.

Mac D. Finlayson, Texas Guaranteed Student Loan Corp., Tulsa, OK, for Defendants.

## ORDER

TOM R. CORNISH, Bankruptcy Judge.

On the 20th day of May, 1996, the above-referenced adversary proceeding came on for trial. Counsel appearing were Jim Pearson for the Plaintiff and Mac Finlayson for the Defendant, Texas Guaranteed Student Loan Corporation.

After a review of the above-referenced adversary proceeding, hearing testimony presented and arguments of counsel, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed.R.Bankr.P., in this core proceeding:

## STATEMENT OF THE ISSUE

Whether the excepting of the Debtor's student loan obligation from discharge will impose an undue hardship on the Plaintiffs.

## FINDINGS OF FACT

1. On July 5, 1995, the Debtors filed their Chapter 7 petition seeking relief under the Bankruptcy Code.

2. On August 9, 1995, the Plaintiffs filed a Complaint to discharge student loan. Several other adversaries were filed seeking to discharge loans and on December 15, 1995, this Court entered an Order of Consolidation consolidating those adversary proceedings. At the time of trial, the Debtors had settled with the Oklahoma State Regents for Higher Education. The only Defendant remaining is the Texas Guaranteed Student Loan Corporation. Reverend Griffin received the proceeds from the loan with Texas Guaranteed Student Loan Corporation.

3. Reverend Griffin is a minister with the Methodist Church. At the time he filed bankruptcy, he was living in Davis, Oklahoma and was the minister of the United Methodist Church in Davis. At the present time, Reverend Griffin is the minister at the Methodist Church in Jones, Oklahoma, where the Debtors live. Reverend Griffin's salary is $18,716.00. In addition, he received $2,400.00 from the church to pay utilities and to furnish the parsonage. Also, $3,000.00 is budgeted for his expenses. He may recover his expenses when he submits vouchers up to the $3,000.00 limit. Reverend Griffin does not anticipate that his income will change significantly in the next few years.

Mrs. Griffin recently graduated from East Texas State College in Commerce, Texas. While she was attending school, she was employed with St. Anthony's as a psych technician earning $6.33 per hour. Mrs. Griffin accepted a job with the Community Counseling Center in Oklahoma City on May 19, 1996 where she will earn $17,500.00 per year.

4. The Debtors have three children: Jeff, 15; Jeremy, 13; and Justin, 11. Justin has severe asthma and has had for approximately six years. He has currently been prescribed five inhalers which he takes two or three times per day. Mrs. Griffin testified that the cost of the medication was approximately $300.00 per month. However, on further examination, she testified that the $100.00 per month as set forth on Schedule J for medical expenses was low but that her husband would have the accurate information. Reverend Griffin testified that he believed the medical expenses would be between $150.00 and $200.00 per month. These expenses are incurred assuming that there are no extraordinary circumstances. The Debtors have medical insurance with Aetna. The Debtors have a co-payment with this insur-

ance. The maximum amount the insurance company will pay is $3,000.00 per year. There is no possibility that the medical costs will decrease.

5. The Debtors have also incurred expenses in connection with braces for Jeremy. The Debtors pay $125.00 per month for the braces. Reverend Griffin testified that he believes approximately $1,900.00 is due to the orthodontist.

6. Mrs. Griffin was in an accident in January, 1996, which totaled her 1987 Plymouth Sundance. The Sundance was paid for and had a value of $800.00 to $1,000.00. However, they received very little value after the accident. Mrs. Griffin replaced her vehicle with a 1990 Geo Tracker. The purchase price was $10,300.00 and no money was paid at the time of the purchase. The vehicle was financed for 48 months with a monthly payment of $332.36. Reverend Griffin has a vehicle which is a 1984 Buick LeSabre with approximately 140,000 miles. Reverend Griffin usually walks to work; however, he uses his vehicle for hospital visitation, member visitation and to commute to conference meetings.

7. The Debtors are also indebted to Oklahoma Regents. They have reaffirmed a debt of approximately $6,000.00 which is payable at $50.00 per month.

8. Mrs. Griffin testified that their financial situation is tight at the present time. However, she testified that their current obligations were being met except that they were behind two weeks on the payment to the orthodontist.

9. The Debtors' adjusted gross income, as reflected by their tax returns, is as follows:

| 1992 | $ 9,196.00 |
| 1993 | $ 5,515.00 |
| 1994 | $14,856.00 |
| 1995 | $14,017.00 |

However, with Mrs. Griffin's new employment, the Debtors' income should increase approximately $360.00 per month.

10. At the conclusion of the hearing, the Judge requested that the Defendant submit

the amount of principal that is currently owed. The Defendant notified this Court by letter which was filed of record on May 28, 1996, that the original principal amount of the consolidated promissory note was $47,076.00.

### CONCLUSIONS OF LAW

A. Section 523(a)(8) of the Bankruptcy Code provides:

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

The debtor seeking a discharge of a student loan bears the burden of proof on the issue of hardship. *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock)*, 45 F.3d 363, 367 (10th Cir.1995) (citing *In re Roberson*, 999 F.2d 1132, 1137 (7th Cir.1993)). The Bankruptcy Code does not define "undue hardship." This Court believes, as set forth in *Mayes v. Oklahoma State Regents for Higher Education (In re Mayes)*, 183 B.R. 261 (Bankr.E.D.Okla.1995) that the "totality of circumstances" test is the best test in this instance.[1] The Northern District of Oklahoma in *Claxton v. Student Loan Marketing Ass'n. (In re Claxton)*, 140 B.R. 565 (Bankr. N.D.Okla.1992) noted that the poverty guideline test is suggestive in the "totality of the circumstances" test; however, it is not conclusive. The Court may also look at other factors.

---

1. This Court, in *Mayes v. Oklahoma State Regents for Higher Education (In re Mayes)*, 183 B.R. 261 (Bankr.E.D.Okla.1995) discussed the various tests used by Courts in determining "undue hardship."

■ B. In the instant case, the poverty guideline for a five person family unit is $18,220.00. *Department of Health and Human Services Poverty Guidelines*, 61 F.R. 8286 (1996). Based on the Debtors' earnings, they are significantly above the poverty guidelines.

The Court may also consider other factors. Reverend Griffin, after receiving the student loan from the Defendant, received his Masters Degree and Mrs. Griffin has now earned her college degree.

The Bankruptcy Code is clear that Congress did not intend for student loans to be discharged except in rare circumstances. This is not one of those situations. The Court, after hearing evidence presented, does not believe it would impose an undue hardship on the Debtors to repay the student loan. Therefore, the student loan is nondischargeable.

■ C. The creditor urges this Court to revisit its decision in *Mayes* as it pertains to the Court's ability to modify the amount owed or its repayment terms. This Court believes that it does have the authority to modify the repayment terms and/or the amount owed. *Mayes* at 264 (citing *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98, 102 (Bankr.N.D.Ohio 1982)). *See also, Berthiaume v. Pennsylvania Higher Educ. Assistance Authority (In re Berthiaume)*, 138 B.R. 516 (Bankr.W.D.Ky.1992); *Ballard v. Commonwealth of Virginia (In re Ballard)*, 60 B.R. 673 (Bankr.W.D.Va.1986); *Georgia Higher Educ. Assistance Corp. v. Bowen (In re Bowen)*, 37 B.R. 171 (Bankr. M.D.Fla.1984); *United States v. Brown (In re Brown)*, 18 B.R. 219 (Bankr.D.Ks.1982); and *United States v. Hemmen (In re Hemmen)*, 7 B.R. 63 (Bankr.N.D.Ala.1980).

The Court believes that it would be an "undue hardship" for the Debtors to pay any of the accrued interest and attorneys' fees associated with these student loans. As a result, this Court finds that any accrued interest and attorneys' fees are dischargeable. The Debtors shall repay the principal balance of the student loan at the rate of $200.00 per month beginning July 1, 1996 until the principal balance is paid.

IT IS THEREFORE ORDERED that the principal amount of the student loan is **nondischargeable.**

IT IS FURTHER ORDERED that the interest and attorneys' fees incurred through the date of this Order in connection with this student loan are **dischargeable.**

IT IS FURTHER ORDERED that the Debtors are to repay the principal amount in monthly payments of $200.00 beginning July 1, 1996 until the principal balance is paid. Post–July, 1996 interest shall be waived as long as payments are timely made.