**In re Robert ALDERETE and Linda D. Alderete, Debtors.**

**Robert Alderete and Linda D. Alderete, Plaintiffs,**

**v.**

**Colorado Student Loan Program for State of Colorado, OSI Collection Services Education Loan Service Center, Whindam Professionals, and U.S. Department of Education, Defendants.**

Bankruptcy No. 7–98–16943 MA.

Adversary No. 00–1029 M.

United States Bankruptcy Court, D. New Mexico.

Dec. 5, 2002.

James A. Askew, Karla K. Poe, Edward Ricco, Robert M. St. John, Albuquerque, NM, for Educational Credit Management Corporation.

Manuel Lucero, Assistant U.S. Attorney, Albuquerque, NM, for U.S. Department of Education.

George M. Moore, Rebecca E. Wardlaw, Albuquerque, NM, for Robert and Linda D. Alderete.

Pablo Simon Salas, Denver, CO, for Colorado Student Loan Program For State and State of Colorado.

### *MEMORANDUM*

MARK B. MCFEELEY, Chief Judge.

THIS MATTER came before the Court on the Complaint for Hardship Discharge Pursuant to 11 U.S.C. § 523(a)(8)(B) ("Complaint"). The Court held a trial on the merits on October 8, 2002, at which time the Court took the matter under advisement. Plaintiffs seek to discharge their student loans under 11 U.S.C. § 523(a)(8) on grounds of undue hardship. Plaintiffs were represented by George M. Moore. Defendant, Educational Credit Management Corporation ("ECMC") was represented by Karla Poe. The United States Department of Education ("USDE") was represented by Manuel Lucero. Counsel for Colorado Student

Loan Program ("CSLP"), Pablo Salas, did not appear. After considering all evidence presented at the trial and the relevant case law and statutes, and being otherwise fully informed, the Court finds that Plaintiffs have failed to meet their burden of proving that repayment of the student loans will cause an undue hardship sufficient to discharge the loans in their entirety. However, based on their current and anticipated future financial condition, Plaintiffs will not be able to pay off their student loans in full if interest and attorneys' fees continue to accrue. The Court, therefore, concludes that the principal amount of Plaintiffs' student loans are not dischargeable, but that the interest and attorneys' fees are dischargeable.

### FACTS

Robert Alderete is 37 years old. His wife, Linda Alderete, is 32 years old. They have three children, boys ages 12, 11 and 8. Plaintiffs met each other while attending the Colorado Institute of Art. They were married in December of 1989. Robert Alderete received an associates' degree in visual communication from the Colorado Institute of Art in December of 1990. Linda Alderete received her associates' degree in visual communication from the Colorado Institute of Art in July of 1991, after taking some time off following the birth of the couple's first child. To pay for their education, Plaintiffs obtained several student loans. All of the loans are the type of educational loan contemplated by 11 U.S.C. § 523(a)(8). ECMC is the holder of a total of six notes, three in the name of Robert Alderete, and three in the name of Linda Alderete. USDE is the holder of three notes in the name of Robert Alderete. CSLP is the holder of one note in the name of Linda Alderete. The parties have stipulated that the following amounts are now due and owing under each of the student loans:

| Note | Principal [1] | Unpaid Interest [2] | Collection Costs | Total | Interest rate |
|---|---|---|---|---|---|
| ECMC Note 1—Robert Alderete (amount disbursed = $4,000) | $ 5,515.25 ($ 4,000.00) | $ 2,803.75 | $ 1,951.12 | $10,270.12 | 6.71% |
| ECMC Note 2—Robert Alderete (amount disbursed = $4,000) | $ 5,873.82 ($ 4,000.00) | $ 2,984.18 | $ 2,077.54 | $10,935.546 | 6.71% |
| ECMC Note 3—Robert Alderete (amount disbursed = $2,625.00) | $ 3,382.45 ($ 2,625.00) | $ 1,939.46 | $ 1,206.28 | $ 6,528.19 | 10.00% |
| ECMC Note 4—Linda Alderete (amount disbursed = $2,625.00) | $ 2,509.83 ($ 2,625.00) | $ 1,475.67 | $ 904.34 | $ 4,889.84 | 10.00% |
| ECMC Note 5—Linda Alderete (amount disbursed = $4,000.00) | $ 5,039.26 ($ 4,000.00) | $ 2,921.22 | $ 1,805.93 | $ 9,766.41 | 10.00% |
| ECMC Note 6—Linda Alderete (amount disbursed = $9,075.21) | $12,062.06 ($ 9,075.21) | $ 3,396.04 | $ 3,475.43 | $18,933.53 | 10.00% |

1. Amounts are capitalized principal balances. The original principal disbursement for each loan, as reported in the Pre–Trial Order, is reflected in parentheses.

2. Unpaid interest for ECMC loans is as of August 2, 2001; Unpaid interest for CSLP's loan is as of September 4, 2001.

| USDE Note 1—Robert Alderete | $ 1,210.62 [3] | $ 417.94 | $ 15.16 | $ 1,643.72 |
|---|---|---|---|---|
| USDE Note 2—Robert Alderete | $ 1,218.53 [4] | $ 419.24 | $ 13.00 | $ 1,640.77 |
| USDE Note 3—Robert Alderete | $ 4,019.42 [5] | $ 1,865.65 | $ 28.15 | $ 5,913.22 |
| CSLP Note 1—Linda Alderete (amount disbursed = $2,625.00) | $ 3,654.89 ($ 2,625.00) | $ 3,654.89 | $ 1,045.49 | $ 6,336.95 |

USDE also holds an assignment dated January 22, 1999. The parties stipulated that the total due USDE as of June 27, 2001 is $11,014.27.[6] From the dates the funds were disbursed under the ECMC loans to Robert Alderete, no payments were made until after the loans were in default. After default, Robert Alderete paid a total of $1,904.00 toward the ECMC notes. He also obtained several deferments and forebearances on the notes: 19 months for Note 1; 36 months for Note 2, and 45 months for Note 3.

From the dates the funds were disbursed under the ECMC loans to Linda Alderete, $184.00 was paid on Note 6 prior to default. No payments were made under Notes 4 and 5 until after the loans were in default. After default, Linda Alderete paid a total of $1,305.00 toward the ECMC notes. She also obtained several deferments and forebearances on the notes: 17 months for Note 4; 26 months for Note 5; and 24 months for Note 6.

Plaintiffs now live in Albuquerque. Neither works in the field for which their education trained them. Robert Alderete works for Tumbleweed Resources ("Tumbleweed") as a landscape maintenance man. He has worked for Tumbleweed for the past twelve years. He works as a foreman and supervises a crew that performs year-round landscape maintenance for apartment complexes. His current hourly pay is $8.50. His only expected increase in pay is for cost of living wage increases. Mr. Alderete has not investigated possible employment opportunities with other landscaping businesses who perform irrigation maintenance or installation where he might be able to earn higher pay. Nor has he looked for employment in the advertising/graphic design/visual arts field in which he obtained his degree because his skills are now outdated.

Linda Alderete works part-time for the Albuquerque Public Schools ("APS") as an educational assistant in a kindergarten class. She generally works thirty hours a week. She does not work during the summer months. She has held this position

---

3. It is not clear whether this is a capitalized principal balance. It is the only evidence of the principal amount of this note before the Court.

4. It is not clear whether this is a capitalized principal balance. It is the only evidence of the principal amount of this note before the Court.

5. It is not clear whether this is a capitalized principal balance. It is the only evidence of the principal amount of this note before the Court.

6. This amount does not reflect the cumulative total of principal, interest and fees reported for Notes 1, 2, and 3 in the chart. There is no explanation for this discrepancy other than the inference that the assignment included some additional amount. Because it does not affect the outcome of the Court's analysis, the Court will use the figures reported for each note as reflected in the chart to determine the estimated total indebtedness.

for five years. Prior to that, Ms. Alderete stayed at home to care for the children. When the APS budget allows, Ms. Alderete receives increases in her annual pay. This year she did not receive a salary increase. In order to keep her position, Ms. Alderete will either need to take certain specified classes at the University of New Mexico (which she cannot afford), or take and pass an exam. Without going back to college, there is no possibility for advancement within APS.

Debtors' total net monthly income as reported on the Debtors' Schedule J for the year 2000 is $1,799.00. Their total amount of monthly expenses as reported on Schedule J for the year 2000 is $1,797.00. Included in the Debtors' expenses is food in the amount of $360.00, rent in the amount of $550.00, charitable contributions in the amount of $160.00, home maintenance of $60.00, and other miscellaneous necessities in the amount of $170.00. Debtors testified that their rent in the amount of $550.00 per month is not a fixed rate. Debtors testified that they try to give $160.00 to their church, but that when other expenses arise, they use the money budgeted for charitable donations to cover the expense. Mr. Alderete testified that they do not always spend $60.00 per month for home maintenance. Ms. Alderete testified that their monthly telephone bill is $100.00 because her mother lives in Kansas. She also testified that their food budget is tight, but that she prepares the meals and they buy store brand items in order to save on food costs. The Debtors have medical insurance to cover their family, but their dental insurance does not cover the children. Their monthly budget for medical and dental expenses is $10.00, but a co-pay under their insurance plan for a visit to the doctor's office is $15.00.

The Debtors own one car, a 1991 Jeep Cherokee with approximately 200,000 miles on it. Mr. Alderete has use of the company truck to get to and from work, but because it holds landscape maintenance tools he does not otherwise use the truck for family errands. Mr. Alderete is in good health. Ms. Alderete has arthritis and is deaf in one ear, but this does not prevent her from working. One of their children has a speech impediment for which he receives therapy at school.

Other than debts to Humana Hospital (listed as 0), Medical Center of Aurora, assignee of Humana Hospital (listed as $385), Cushing Hospital (listed as 0), and Credit World, Assignee of Cushing Hospital (listed as $355), all debts listed on the Debtors' schedule F are for student loans. The total unsecured debt reported on the Debtors' Schedule F is $44,072.00. Over 98% of the Debtor's scheduled unsecured debt is for student loans.

The total capitalized principal amount of the Plaintiffs' student loans is $44,486.13 as reported in the chart above. Including interest and collection costs as reported in the chart above, the total indebtedness is nearly $78,000.00. Debtors testified that they considered the William D. Ford Loan Consolidation Program ("Ford Program"), but that they did not receive sufficient answers to their questions concerning the program and refused to sign another promissory note. Under the Ford Program, a formula is applied based on the adjusted gross income of the debtors and the poverty guidelines to determine the payment amount for the consolidated student loans. *See* Exhibit 62, Affidavit of Peggy Helms, describing the Ford Program. It is possible to obtain a deferral for payments due under this program. *Id.*, ¶¶ 9 and 10. After twenty-five years, even if there is a balance remaining on the consolidated loans, the debt is forgiven.

*Id.,* ¶ 12. Based on the Debtors' current salary and outstanding loans, the approximate monthly payment amount under the Ford Program would be about $70.00.[7] *Id.* ¶ 13. There is no evidence as to whether the Debtors would qualify for the Ford Program.

## DISCUSSION

▮ Plaintiffs seek to discharge their student loans pursuant to 11 U.S.C. § 523(a)(8) based on undue hardship. That section provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt
>
> > (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

The plaintiff bears the burden of proving undue hardship by a preponderance of evidence. *Grogan v. Garner,* 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (establishing preponderance of evidence standard of proof for dischargeability matters); *Woodcock v. Chemical Bank (In re Woodcock),* 45 F.3d 363, 367 (10th Cir. 1995).

"Undue hardship" is not defined in the Bankruptcy Code. In considering dischargeability of student loans based on undue hardship, courts have struggled to come up with a test or list of factors to assist in their determination of what constitutes an "undue hardship." *See In re Kopf,* 245 B.R. 731, 736 (Bankr.D.Me.2000) ("Without express statutory definition 'undue hardship' has proved an eely notion."); *Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 303–305 (3rd Cir.1995) (discussing the various tests). The Tenth Circuit has not adopted any of the formulated tests to determine undue hardship. *See Woodcock v. Chemical Bank (In re Woodcock),* 45 F.3d 363, 367 (10th Cir.1995) (acknowledging the test enunciated by *Brunner v. New York State Higher Education Services Corp.,* 831 F.2d 395 (2nd Cir.1987)) and the tripartite mechanical, good-faith, and policy test established by *In re Johnson,* 5 B.C.D. 532 (Bankr. E.D.Pa.1979).

▮ Many courts, including bankruptcy courts within the Tenth Circuit, have applied the test set forth in *Brunner v. New York State Higher Education Services Corp.,* 831 F.2d 395 (2nd Cir.1987). *See, e.g., In re Hollister,* 247 B.R. 485 (Bankr. W.D.Okla.2000) (applying *Brunner* test); *Coats v. New Jersey Higher Education Assistance Authority (In re Coats),* 214 B.R. 397 (Bankr.N.D.Okla.1997); *Lindberg v. American Credit & Collection Student Loan Serv. Center (In re Lindberg),* 170 B.R. 462, (Bankr.D.Kan.1994). *But see Mayes v. Oklahoma State Regents for Higher Education (In re Mayes),* 183 B.R. 261, 264 (Bankr.E.D.Okla.1995) (adopting a "totality of circumstances" approach). The *Brunner* test is a three-prong test that requires the following:

> (1) that the debtor cannot maintain, based on current income and expenses, a

---

**7.** The calculations in the Affidavit of Peggy Helms do not include Linda Alderete's stu-dent loan granted by CSLP.

"minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.

Failure to meet any one prong of the *Brunner* test results in a determination of non-dischargeability. *See In re Hollister*, 247 B.R. 485, 490 (Bankr.W.D.Okla.2000) ("All three elements [of the *Brunner* test] must be satisfied individually before a discharge can be granted.") (citations omitted).

In applying these standards to the facts of this case, the Court finds that Plaintiffs have met the first prong of the *Brunner* test. Plaintiffs' current income and expenses reflect that, although they live frugally, they are barely able to make ends meet. Defendants questioned the Plaintiffs' monthly charitable donation of $160.00, and whether it is appropriate to include that in the calculation of reasonable expenses, citing *In re Ritchie*, 254 B.R. 913, 919 (Bankr.D.Idaho 2000) (concluding that religious and charitable donations must be excluded from expenses when determining "undue hardship" under § 523(a)(8)), and *In re McLeroy*, 250 B.R. 872, 879 (N.D.Tex.2000) (concluding that where debtor's tithing practices exceeded 15% of her income, they could not be included as part of her reasonable expenses for determining undue hardship, but holding that "a debtor's tithes may be considered in some circumstances as an appropriate expenses for the purpose of determining undue hardship . . ."). However, Plaintiffs testified that they often did not contribute $160.00 to their church and used funds budgeted for charitable dona-tions to cover other expenses, such as clothing needs for the children. Thus the Court need not determine whether $160.00 per month should be excluded from the Plaintiffs' reasonable expenses. Their monthly food budget of $360.00 for a family of five is very low, and their monthly budgeted medical expense of $10.00 does not even cover the cost of one co-payment for a visit to the doctor's office. In sum, given Plaintiffs' current income and reasonable expenses, they are unable at the present time to maintain a minimal standard of living and repay their student loans. Thus, Plaintiffs have met the first prong of the *Brunner* test.

The second prong of the *Brunner* test requires a showing that "additional circumstances" exist that would indicate that the current inability to repay the loans will likely persist long into the repayment period for the student loans. *Brunner*, 831 F.2d at 396. As noted by the Bankruptcy Court for the District of Kansas, "the second prong of the test requires that the debtor demonstrate that unique or exceptional circumstances exist, such as illness, lack of job skills, large numbers of dependents, or a combination of these." *In re Mathews*, 166 B.R. 940, 945 (Bankr.D.Kan.1994) (citing *In re Brunner*, 46 B.R. 752, 754, 755 (S.D.N.Y. 1985)). Requiring a showing of additional circumstances in order to meet the second prong of the *Brunner* test is consistent with the policy underlying the exceptions to discharge provision that, generally, student loans should not be discharged. *See Mayes v. Oklahoma State Regents for Higher Education (In re Mayes)*, 183 B.R. 261, 264 (Bankr.E.D.Okla.1995) (noting that "The Bankruptcy Code is clear that Congress did not intend student loans to be discharged except in rare circumstances."). " 'Undue hardship' means more than having a tight budget or a

present inability to pay, because most debtors could make such assertions." *Johnson v. U.S.A. Funds, Inc. (In re Johnson)*, 121 B.R. 91, 93 (Bankr. N.D.Okla.1990) (citing *In re Coleman*, 98 B.R. 443 (Bankr.S.D.Ind.1989)).

In this case, Plaintiffs are relatively young and have no health conditions that impede their ability to work. As their children reach the age of majority, Plaintiffs will have less strain on their family budget. The Court cannot find that their ability to earn better pay in the future is limited by their current circumstances. Plaintiffs have made no real effort to search for better-paying or additional employment. Nor do the Plaintiffs currently face any additional "exceptional circumstances," such as illness, recent disability, or an exceptionally large number of dependants, that would hamper their ability to repay the loans.

However, the total amount of student loan debt is quite large, and given the Plaintiffs' current and future anticipated financial situation, repayment of the total indebtedness, including interest and attorneys' fees will be an insurmountable burden. At least one bankruptcy court within the Tenth Circuit has concluded that "the burden of a debt which can never realistically be repaid constitutes an undue hardship." *Coats v. New Jersey Higher Education Assistance Authority (In re Coats)*, 214 B.R. 397, 403 (Bankr.N.D.Okla. 1997) (discharging the entire student debt on grounds of undue hardship); *but see Sands v. United Student Aid Funds, Inc. (In re Sands)*, 166 B.R. 299, 309, n. 19 (Bankr.W.D.Mich.1994) (size of debt is irrelevant). In this case, Plaintiffs' current income barely affords them a minimal standard of living with almost no disposable income leftover with which to repay student loans. The evidence suggests that their current financial situation is likely to persist into the repayment period. Therefore, even though the Plaintiffs do not face the type of "exceptional circumstances" such as illness or disability contemplated by *Brunner*, the court finds that the continuing accrual of interest on these student loans which the Plaintiffs will never realistically be able to repay constitutes an "undue hardship." The Court will follow the lead of the Bankruptcy Court for the Eastern District of Oklahoma, and conclude that the repayment of principal will not impose an undue hardship, but that interest and attorneys' fees associated with Plaintiffs' student loans is dischargeable. *See Griffin v. Eduserv (In re Griffin)*, 197 B.R. 144, 147 (Bankr.E.D.Okla.1996); *Mayes v. Oklahoma State Regents for Higher Education (In re Mayes)*, 183 B.R. 261, 264 (Bankr.E.D.Okla.1995).

In applying *Brunner*, "the question of good faith should only be reached if the debtor has satisfied the first two elements." *Pennsylvania Higher Education Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 305 (3rd Cir.1995) (citing *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir. 1993)). Here, Plaintiffs have only satisfied the second prong of *Brunner* in part. However, because evidence on this issue was presented to the Court, and because the "totality of circumstances" approach to student loan dischargeability has also been applied within this circuit, Court will also examine the facts in light of the good faith requirement. *See, e.g., Griffin v. Eduserv (In re Griffin)*, 197 B.R. 144 (Bankr.E.D.Okla.1996)(applying "totality of circumstances" test); *Johnson v. U.S.A. Funds, Inc. (In re Johnson)*, 121 B.R. 91, 93 (Bankr.N.D.Okla.1990) (rejecting *Brunner* in favor of "totality of circumstances" approach).

Plaintiffs have made minimal payments on their student loans. In fact only

$194.00 was paid towards any of the outstanding student loans prior to default. However, Plaintiffs testified that they made payments whenever they were able to do so. Failure to make any payments at all towards outstanding student loans does not constitute *per se* evidence of a debtor's lack of good faith in repaying student loans. *See Sands v. United Student Aid Funds, Inc. (In re Sands)*, 166 B.R. 299, 312 (Bankr.W.D.Mich.1994) (failure to pay is insufficient evidence of bad faith, especially when debtor has no resources from which to pay and has obtained deferments). Here, Plaintiffs did seek and receive several deferrals on their student loans.

■ The Court notes that student loans comprise over 98% of the Plaintiffs' scheduled unsecured debt. However, as noted by the bankruptcy court in *In re Hollister*, 247 B.R. 485, 491–492 (Bankr. W.D.Okla.2000), "the fact that a debtor seeks to discharge almost exclusively student loan obligations in his bankruptcy should be afforded little weight." This is true because the primary purpose of every bankruptcy is to discharge debts. *Id.* Nevertheless, that student loans comprise nearly all of Plaintiffs' debt, which they now seek to discharge on grounds of undue hardship is relevant to the Court's overall analysis. *See Hollister*, 247 B.R. at 492 (debtor's purpose in filing bankruptcy is relevant to "good faith" analysis, but "should not be determinative."); *In re Douglass*, 237 B.R. 652, 656 (Bankr. N.D.Ohio 1999) (in applying *Brunner* and concluding that debtor failed to show "undue hardship," bankruptcy court considered that the debtor's student loan obligation comprised 92% of her total debt, though percentage of debt was not a factor

discussed by the court in connection with the "good faith" prong).

■ Finally, the Plaintiffs did not even consider the Ford Program [8], until after the adversary proceeding was filed. Whether the Debtors have made any effort to negotiate repayment options is "an important indicator of good faith." *In re Wallace*, 259 B.R. 170, 185 (C.D.Cal.2000) (citations omitted). Mr. Alderete testified that he looked into the Ford Program, but refused to sign another promissory note because he did not want to promise anything he could not commit to, and that signing another promissory note scared him. Both Mr. Alderete and Ms. Alderete testified that they had questions concerning the Ford Program for which the did not receive satisfactory answers. Mr. Alderete also testified that his attorney explained that the repayment plan would consolidate all of Plaintiffs' outstanding student loans.

Under the Income Contingent Repayment ("ICR") Plan offered under the Ford Program, outstanding loans are consolidated into one loan for a maximum repayment period of twenty-five years. *See* Affidavit of Peggy Helms, *Exhibit 62*. Any portion of the loan that remains unpaid at the end of the twenty-five year period is cancelled. *Id.* The monthly payment amount is contingent upon a borrower's disposable income, and deferments and forbearances can be granted under certain circumstances. *Id.* If a borrower's disposable income falls below a certain amount, measured by the poverty guidelines, no payments are due until the borrower's income again rises above that level. *Id.*

■ A debtor is not required to participate in a repayment program in or-

---

**8.** The Ford Program offers four repayment plans, including an Income Contingent Repayment Plan. *See* Exhibit 59.

der to satisfy the "good faith" prong of *Brunner*, but whether a debtor is willing to participate in a repayment program is a relevant factor. *See In re Swinney*, 266 B.R. 800, 806 (Bankr.N.D.Ohio 2001) (concluding that the debtor failed to meet the good faith requirement under the *Brunner* test and could not discharge her student loan debt where no exceptional circumstances were present to justify debtor's failure to avail herself of repayment programs when the evidence showed that the government offered the debtor an income contingent repayment program.); *In re Douglass*, 237 B.R. 652, 657 (Bankr. N.D.Ohio 1999) (debtor failed to meet "good faith" prong of *Brunner* where debtor failed to make any payments on her student loan, filed bankruptcy prior to the date her first payment became due, and failed to negotiate any repayment schedule or apply for the income contingent repayment plan). While there is no evidence that the Plaintiffs are eligible for the ICR option under the Ford Program, the Court finds the Plaintiffs' explanation for their failure to inquire further about the program, coupled with the fact that they did not inquire at all until after this adversary proceeding was filed, insufficient to support their claim of good faith efforts to repay the loans.

### CONCLUSION

Debtors have not met their burden of proving that their student loans should be discharged in their entirety based on "undue hardship." Plaintiffs are relatively young and have no medical conditions that would prevent them from working. Nor have they satisfactorily demonstrated their good faith effort to repay the loans. Nevertheless, requiring payment of accruing interest and collection costs will impose an undue hardship, given the Plaintiffs' current financial situation which is likely to persist well into the repayment period for the loans.

For the foregoing reasons, the Court concludes that the principal balance of Plaintiffs' student loans is not dischargeable, but interest and attorneys' fees associated with the student loans is dischargeable. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052, Fed. R. Bankr.P. An appropriate judgment will be entered.